**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**SEAN BOBBY MAZER,**

**Plaintiff,**

**v.** **Case No: 5:15-cv-376-Oc-PRL**

**COMMISSIONER OF SOCIAL SECURITY**

**Defendant.**

---

## ORDER

Plaintiff appeals the administrative decision denying his application for Disability Insurance Benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **AFFIRMED.**

### I. BACKGROUND

Plaintiff filed an application for DIB, alleging disability beginning June 23, 2009. (Tr. 250–53). The claim was denied initially, and upon reconsideration. (Tr. 138–40, 143–45). At Plaintiff's request, a hearing was held before an Administrative Law Judge, who then issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 115–28). But then the Appeals Council remanded the case, in which the Administrative Law Judge was to do the following:

> Obtain additional evidence concerning the claimant's intellectual functioning in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512– 1513). The additional evidence should include, if warranted and available, a consultative psychological examination with intelligence testing and medical source statements about what the claimant can still do despite the impairment.

> Further, if necessary, obtain evidence from a medical expert to clarify whether the claimant's impairment meets or equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No.4 (20 CFR 404.1527(f) and Social Security Ruling 96-6p).
>
> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96- 8p).
>
> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 135–36). A second hearing was held before Administrative Law Judge Mary C. Montanus (the "ALJ"), who then issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 17–32, 40–91).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 23). At step two, the ALJ determined that Plaintiff had the following severe impairments: cognitive disorder with memory deficit, mood disorder, and generalized anxiety disorder, history of seizure disorder, osteoarthritis of the cervical and lumbar spine with cervical spondylosis, obesity, and possible coronary artery disease. (Tr. 23).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23–25). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b):

> "[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he should not climb ladders, ropes or

> scaffolds, work at heights or with dangerous moving machinery, crawling. He can occasionally stoop, crouch, kneel, climb stairs, perform overhead work, or balance. The claimant perform simple, routine and repetitive 1-3 steps tasks, with occasional change in work setting and occasional superficial interaction with others (no intensive activities, such as directing others, persuading or negotiating); he should not travel to unfamiliar places. He functions at a marginal educational level.

(Tr. 25–30). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 30).

At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform—table worker, routing clerk, and agricultural product sorter. (Tr. 31). Thus, the ALJ found that Plaintiff was not disabled from June 23, 2009, through the date of the decision. (Tr. 32).

Then, the Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner. (Tr. 1–5). With his administrative remedies exhausted, Plaintiff filed the instant appeal. (Doc. 1).

## II. STANDARD OF REVIEW

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

## III. DISCUSSION

On appeal, Plaintiff raises three issues: (1) whether the ALJ erred by finding that Plaintiff did not meet a listed impairment, (2) whether the ALJ properly evaluated the medical evidence, and (3) whether the ALJ properly evaluated Plaintiff's credibility. For the reasons explained below, I find no error.

**A. Substantial Evidence supports the ALJ's finding that Plaintiff did not meet a listed impairment**

First, Plaintiff argues that the ALJ failed to properly apply the legal standard set forth in listing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05, intellectual disability.[1]

The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a plaintiff is presumptively determined to be disabled regardless of his or her age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *See Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). At this stage of the evaluation process, however, the burden is on the plaintiff to prove that he or she is disabled. *See Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this Circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. *See Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). At issue here is Section 12.05C of the listing of impairments, which describes intellectual disability.

Section 12.05's introductory paragraph provides that intellectual disability "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Then, the listing provides that "[t]he required level of

---

[1] On August 1, 2013 the SSA amended listing 12.05 by replacing the term "mental retardation" with "intellectual disability." Though ALJ used the old term during the August 14, 2013 hearing, I use the new term "intellectual disability."

severity for this disorder is met when the requirements in A, B, C, or D are satisfied." Subsection 12.05C provides, in turn, that a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." The introductory language to the section on Mental Disorders further explains that: "If your impairment satisfies the diagnostic description in the introductory paragraph [of § 12.05] and any one of the four sets of criteria, we will find that your impairment meets the listing."

The Commissioner does not dispute that Plaintiff meets the requirements of subsection C—i.e., a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although a valid IQ score between sixty and seventy creates "a rebuttable presumption that [the plaintiff] manifested deficits in adaptive functioning before age 22, the Commissioner may present evidence relating to a claimant's daily life to rebut this presumption." *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459 (11th Cir. 2015). Indeed, the Eleventh Circuit has held that "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). Thus, despite a plaintiff's valid IQ score, it is appropriate for an ALJ to consider a plaintiff's work history, daily activities, and behavior in evaluating a plaintiff's adaptive functioning. *See, e.g., Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 984 (11th Cir. 2013) (citing part-time work as evidence of Plaintiff's adaptive functioning); *Harris v. Comm'r*, 330 F. App'x 813, 815 (11th Cir. 2009) (citing school performance, work history and activities of daily living as evidence of Plaintiff's adaptive

functioning); *Humphries v. Barnhart*, 183 F. App'x 887, 889 (11th Cir. 2006) (citing work history as evidence of adaptive functioning).

Here, though the ALJ did not explicitly mention Listing 12.05 in her decision, Plaintiff concedes that the ALJ implicitly concluded that the evidence rebutted the presumption that Plaintiff exhibited deficits in adoptive functioning.[2] (Pl.'s Br., pp. 16–19).[3] In sum, at issue is whether Plaintiff has proven that he "exhibit[ed] (1) significantly subaverage general intellectual functioning (2) with deficits in adaptive functioning (3) that manifested before age 22." *O'Neal*, 614 F. App'x at 459; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). "[T]hough the SSA has not specifically defined 'deficits in adaptive functioning,' the Diagnostic and Statistical Manual of Mental Disorders ("DSM") states that adaptive functioning 'refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting."' *O'Neal*, 614 F. App'x at 459 (quoting DSM–IV–TR at 42).

Substantial evidence supports the ALJ's implicit finding that Plaintiff lacked the necessary deficits in adaptive functioning to meet listing 12.05. Though the ALJ conceded that she could

---

[2] An ALJ's failure to specifically mention the Listing for intellectual disability is not dispositive. *See, e.g., James v. Comm'r of Soc. Sec.*, No. 15-11984, 2016 WL 3923826, at *2 (11th Cir. July 21, 2016) (noting that the "finding that [the plaintiff] lacked adaptive deficits as required under the introductory paragraph of Listing 12.05 can be implied from the ALJ's conclusion that [the plaintiff's] prior work experience indicated that she did not have an intellectual disability."); *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773–74 (11th Cir. 2015) (noting that the ALJ can rely on a plaintiff's "daily activities and work history to conclude that [the plaintiff] did not manifest deficits in adaptive functioning consistent with intellectual disability"); *Hutchison v. Bowen*, 787 F.2d 1461, 1463–64 (11th Cir. 1986) (noting that the ALJ may implicitly find that a claimant does not meet a listing).

[3] To the extent Plaintiff argues that the ALJ erred by not finding that Plaintiff had an additional severe impairment of intellectual disability, this argument is not persuasive. Where, as here, the ALJ identifies multiple severe impairments at step two then and proceeds to step three, the ALJ does not err by failing to identify another severe impairment. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[W]e have recognized that step two requires only a finding of 'at least one' severe impairment to continue on to the later steps.").

not rest the finding solely on her observations of the Plaintiff, the ALJ explicitly stated at the August 14, 2013 hearing that—based on talking with Plaintiff for over an hour during that hearing—Plaintiff did not display an intellectual disability. (Tr. 74–75). Also, in her decision, the ALJ elaborated that Plaintiff was articulate without a loss of temper, responsive, and that Plaintiff demonstrated a "significant recall of past events and current symptoms" during the hearing. (Tr. 24, 28).

And as the ALJ also noted in her decision, despite his alleged impairments, Plaintiff worked during the alleged period of disability. (Tr. 23, 24, 28). The record reveals, including Plaintiff's testimony during the August 14, 2013 hearing, that he worked at as a sales associate, inventory stocker, and car detailer after the alleged onset date. (Tr. 46–47, 373). And Plaintiff also worked before the alleged disability period—e.g., he worked over two years as grocery clerk, over two years as a car detailer, and almost a year as a department manager where he supervised at least eight other people and hired and fired employees. (Tr. 287–92).

Although Plaintiff has been diagnosed with an intellectual disability, a mere diagnosis of a listed impairment is not enough to meet Plaintiff's burden. *See Carnes*, 936 F.2d at 1218. At the age of seventeen, a psychologist found that Plaintiff's "non-verbal skills were in the mildly retarded range" and in 2012, Alexander T. Gimon, Ph.D. made a "guarded" finding that Plaintiff had mild mental retardation, along with marked mental limitations. (Tr. 489, 628). Both of these doctors also found that Plaintiff had an IQ score below seventy based on the Wechsler Adult Intelligence Scale.[4] (Tr. 491, 626–27).

---

[4] Though the ALJ did not mention the testing performed when Plaintiff was seventeen, the ALJ accorded little weight to the opinion of Dr. Gimon, and substantial evidence supports the ALJ's decision to do so. *See infra* Section III.B.

As the Commissioner notes (Def.'s Br., pp. 7–8), ample evidence undermines these diagnoses: other tests show IQ scores above seventy and other physicians have failed to find that Plaintiff exhibited an intellectual disability. For example, at the age of ten Plaintiff scored above seventy on the Wechsler Intelligence Scale for Children, and Plaintiff did so again at the age of thirteen. (Tr. 503). An examining psychologist, in 2009, found that Plaintiff's "thought processes appeared concrete, goal oriented and logic[al]" and found that Plaintiff could manage his own funds; the psychologist diagnosed Plaintiff with a cognitive disorder, but not an intellectual disability. (Tr. 506–10). The ALJ accorded significant weight to the opinions of two state agency consulting physicians, both of whom opined that Plaintiff did not have an intellectual disability (nor did they find any marked mental limitations). (Tr. 24, 550–67, 576–92). And the ALJ also noted that Plaintiff's activities do not support the "degree of deficiency found on formal testing." (Tr. 29). Plaintiff's daily activities include taking care of his personal needs without assistance, cooking simple meals, walking a dog, household chores, and talking on the phone with friends. (Tr. 23–24, 315–22, 506–07). Plaintiff can also "count, make change, and recognize coins and paper currency" and can drive. (Tr. 24, 318, 506–07). Lastly, I note that Dr. Gimon himself opined that Plaintiff could succeed in a work environment that was limited to only simple instructions and simple tasks. (Tr. 28, 628).

This record evidence does not support the type of deficit in adaptive functioning required for intellectual disability. *See e.g., Harris*, 330 F. App'x at 815 (finding that substantial evidence supported ALJ's finding that claimant did not have necessary deficits in adaptive functioning where claimant did well in special education classes, was able to hold several jobs, could take care of his personal needs, read, do simple math, and communicate effectively); *Humphries*, 183 Fed. App'x at 889 (claimant did not meet listing 12.05 despite IQ of 65 because there was no showing

of deficits in adaptive functioning). Accordingly, Plaintiff failed to meet his burden to establish that his impairments meet or equal Listing 12.05C.

**B. The ALJ properly considered the medical evidence**

Next, Plaintiff argues that the ALJ improperly considered the medical opinion of Dr. Gimon. At the request of the SSA, Dr. Gimon examined Plaintiff in October of 2012. The doctor found that Plaintiff had a Full Scale IQ of 66 on the Wechsler Adult Intelligence Scale, which suggested mild mental retardation. (Tr. 626–28). At that time, Dr. Gimon also completed a *Medical Source Statement Ability to do Work-related Activities (Mental)*, in which he opined that Plaintiff had marked limitations in the ability to understand and remember simple instructions, to carry out simple instructions, to make judgments on simple work-related instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. (Tr. 629). The doctor further stated that Plaintiff's memory tests indicated an extremely low ability and were consistent with previous testing; that Plaintiff had limited insight and judgment as a result of impaired intellectual functioning; and that Plaintiff would benefit from work that required only simple instructions and simple tasks. (Tr. 628–30).

The law is by now clear that an "ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see also McClurkin v. Soc. Sec. Admin.*, No. 14-15425, 2015 WL 5166045, at *2 (11th Cir. Sept. 4, 2015) (noting that "it is clear from our decision in *Winschel* that the explanation requirement applies equally to the opinions of treating physicians and non-treating physicians").

When weighing opinions from non-treating sources, the ALJ considers the source's relationship with the claimant, the evidence supporting the opinion, its consistency with other

evidence, the source's specialty, and other factors. *See* 20 C.F.R. § 404.1527(c). The regulations do not require the ALJ's RFC assessment to mirror any doctor's opinion. *See* 20 C.F.R. §§ 404.1513, 404.1545, 416.913; 416.945.

For consultative examiners, the Eleventh Circuit law does not require an ALJ to accord special deference to the opinion of a one-time examiner because the physician and patient do not share a longitudinal or treatment relationship, as contemplated by the regulations. *See Denomme v. Comm'r, Soc. Sec. Admin*., 518 F. App'x 875, 877 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.") (citation omitted). Furthermore, although state agency consultants are experts in disability evaluation, their findings are not binding on the ALJ. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Therefore, neither the regulations nor the law of the Eleventh Circuit require the ALJ to adopt any doctor's opinions in its entirety. Here, substantial evidence supports the ALJ's decision to accord little weight to Dr. Gimon's medical opinion.

First, the ALJ stated that Dr. Gimon's findings that Plaintiff had marked limitations "in the ability to understand, remember, and carryout instructions due to his limited insight and judgment due to impaired intellectual functioning" are inconsistent with Plaintiff's prior work experience and daily activities. Plaintiff's prior employment includes, as the ALJ noted, sales and retail experience during the alleged time of disability. (Tr. 46–47, 373). And Plaintiff's activities include driving, playing video games, going shopping once a week, and going to the movies, all of which, according to the ALJ, show that Plaintiff can "performs several activities and tasks requiring a significant ability to keep a routine, demonstrate socially appropriate behavior and interact with others, and concentrate [on] tasks." (Tr. 28–29, 315–22).

Next, the ALJ noted that Dr. Gimon's opinion was inconsistent with Plaintiff's "presentation at the hearing in that [Plaintiff] was articulate, responsive, and demonstrated significant recall of past events." (Tr. 28). The ALJ also noted that the doctor's own opinion contradicted itself in so far as Dr. Gimon opined that Plaintiff could succeed in a work environment that was limited to only simple instructions and simple tasks. (Tr. 28, 628). The ALJ further noted Dr. Gimon's opinion conflicted with the other medical evidence of record, like the "findings on clinical presentation [that Plaintiff could] remember[] 2 of 3 items at the end of the examination and being able to recite the days of the week backward with no errors, and adequately discuss similarities and abstract concepts" (Tr. 28, 508–09) and the findings that Plaintiff had "normal insight and judgment and average intellect with good abstract thinking" (Tr. 28, 653, 696).

Finally the ALJ found that the opinions of the state-agency psychologist were more consistent with the overall record than Dr. Gimon and the ALJ accorded those opinions great weight. (Tr. 29). Both state-agency psychologist opined that that Plaintiff did not have any marked mental limitations.[5] (Tr. 550–67, 576–92). Thus the ALJ properly considered Dr. Gimon's opinion.

**C. The ALJ properly considered Plaintiff's credibility**

Finally, Plaintiff argues that the ALJ failed to properly consider his credibility. The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms were not completely credible. (Tr. 26). I find no error.

[5] State agency consultants are highly qualified specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if supported by the evidence. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p.

In evaluating the extent to which a claimant's symptoms effect his or her capacity to perform basic work activities, an ALJ should properly consider all of the available evidence, including inconsistencies in the evidence, and the extent to which there are conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant. *See* 20 C.F.R. § 416.929(c)(4).

When, as here, an ALJ decides not to fully credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011). In reviewing the ALJ's decision, however, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Id.* at 939. Indeed, a "reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record." *See Carter v. Astrue*, No.3:11–cv–753–J–MCR, 2012 WL 2813965, *6 (M.D. Fla. July 10, 2012). Here, substantial evidence supports the ALJ's finding that the objective medical evidence, and Plaintiff's reported level of activity, did not substantiate his testimony about his functional limitations.

As to Plaintiff's purported physical symptoms, the ALJ found, based on the medical evidence that Plaintiff responded to treatment for his back and shoulder pain; he had a normal range of motion in his back and spine with normal muscle tone; he had no bony tenderness, joint effusion, or reduced range of motion; he had a normal gait and could sit, walk, and squat; he had a brain MRI that showed normal results; and his objective neurological examination findings were within normal limits. (Tr. 26–27, 514, 638, 653, 669, 683, 702). The ALJ also found that the evidence showed normal cardiovascular examinations. (Tr. 27, 513, 641, 653, 669). The ALJ

also noted Plaintiff's daily activities, which include driving, playing video games, going shopping once a week, and going to the movies (Tr. 315–22) and which the ALJ found are "consistent with a range of light work" (Tr. 27). The ALJ also took Plaintiff's obesity into account. (Tr. 27).

As to Plaintiff's alleged mental limitations, the ALJ found that "the record viewed in its entirety does not suggest that the claimant's mental impairments are disabling." (Tr. 28). The ALJ refereed to Plaintiff's 2009 consultative examination, and, after noting Plaintiff's low memory scores, the ALJ noted that Plaintiff had normal speech and normal thought; he was goal oriented and logical; "he was also able to recall 3 items immediately, and 2 out of 3 at the end of the exam;" he was able to name the days of the week backward with no errors; he had a grossly intact remote memory; and he was able to explain "that a whale and dolphin were alike in the that both live in the ocean and breath air, and the expression 'Don't cry over spilled milk' means, what is done is done." (Tr. 28, 506–10). The ALJ also noted records showing that Plaintiff had "normal insight and judgment and average intellect with good abstract thinking." (Tr. 28, 512, 653, 696).

Accordingly, I submit that the ALJ articulated legitimate reasons supported by substantial evidence for not fully crediting Plaintiff's complaints of disabling limitations. *See Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) (noting that the ALJ can consider a claimant's activities when assessing the credibility of subjective complaints); *Robinson v. Astrue*, 365 Fed. App'x. 993, 997–98 (11th Cir. 2010) (noting that inconsistencies or conflicts between a claimant's statements and other evidence are properly considered by the ALJ when determining the plaintiff's credibility).

## IV. CONCLUSION

For the reasons stated above, the ALJ's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is **DIRECTED** to enter final judgment for the Commissioner and **CLOSE THE FILE**.

**DONE** and **ORDERED** in Ocala, Florida on August 19, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties